EASTERN DIS.
May, 1841.

JORDY
vs.
HEBRARD ET AL.

*So where cotton is pledged to secure the payment of a loan of money, and delivered to the agent of the creditor, making the advance, who ships it to be sold for the purpose of paying this loan, it is not liable to an attaching creditor in the hands of the consignee who is made garnishee.*

## JORDY vs. HEBRARD ET AL.

### APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

The provision in the charter of the Louisiana State Bank, that two-thirds of the 6 directors on the part of the State, and two-thirds of the 12 elected by the stockholders, only shall be re-appointed and re-elected *annually*, applies to each class separately; so as to obtain an annual *renewal* of one-third of the whole board.

EASTERN DIS
May, 1841.
────────
JORDY
vs.
HEBRARD ET AL.

The restriction in the charter confines the re-appointment and re-election to two-thirds of the former board; and directors formerly appointed by the Governor and left out, are ineligible to come in *as new members*, elected by the stockholders.

If a director is *ejected* as *ineligible*, the next highest on the list voted for but left out, is not entitled to his seat. A new election must take place.

This is an appeal from a judgment in a proceeding of *quo warranto*, instituted by F. Jordy to oust P. A. Hebrard as a director in the Louisiana State Bank.

At the election of twelve directors by the stockholders of this institution held the 23d of February, 1841, the defendant, Hebrard, was returned duly elected, being the lowest on the list voted for and returned : and having one vote more than the plaintiff, who was left out. The plaintiff shows that Hebrard is ineligible to a seat in the directory this year, having been a director last year. The charter provides that the board is to consist of eighteen members ; six appointed by the Governor and twelve are to be elected by the stockholders ; but that only two-thirds of the old board are eligible to re-appointment and re-election. The Governor in making his appointments left out two members of the old board, but *they* with seven of the old board were *re-elected* by the stockholders ; making nine members from the old board, when the charter only authorized the election of eight of those who had been directors the previous year, being two-thirds of twelve. That Hebrard being the lowest on the list voted for and ineligible (being already a director) should go out, and Jordy the next *highest come in*. A writ of *quo warranto* was awarded to know by what authority Hebrard continued to hold the office.

The defendant averred he was legally and properly appointed and entitled to hold his office as a director in said bank.

He further showed that the stockholders left out *five* of their former directors at the election in 1841, which was one more than the charter required. He set out the votes and proceedings in the election. The whole case turned on the question, whether C. Toledano and V. Vignaud, who were direc-

tors under an appointment of the Governor for the previous year and were left out in the re-appointments, but were elected by the stockholders could be considered as new members? i. e. to come in as directors elected by the stockholders from among those who had not been previously members?

The learned judge presiding considered Toledano and Vignaud as ineligible to hold seats at the board of directors; gave judgment vacating their places and ordering a new election to fill their places. They appealed.

*Eyma*, for the plaintiff.

*Grima*, for the Bank.

*Benjamin*, for the defendant, Hebrard.

*Bodin*, for Toledano and Vignaud, appellants.

*Morphy, J.* delivered the opinion of the court.

Proceedings were instituted by plaintiff in the court below to test the validity of the election of P. A. Hebrard, as a director of the Louisiana State Bank, at an election held on the 23d of February last by the stockholders. In the progress of the cause, two other directors of the new board were drawn into the controversy and the legality of their election questioned. These directors were Vignaud and Toledano. The judge below being of opinion that they could not be legally elected directors of the Bank for 1841, directed an election to be held for two directors to fill their places. They appealed.

The third section of the charter of this bank provides that the board of .directors shall consist of eighteen members, six to be appointed by the Governor and Senate, and twelve to be elected annually by the stockholders; the election by the stockholders to take place on the third Monday after the appointment by the State, *provided however* " that no more than two-thirds of the directors elected by the stockholders and not more than two-thirds of the directors appointed by the Governor

and Senate, who shall be in office at the time of an annual election shall be elected or appointed for the next succeeding year and no director shall hold his office more than three years out of four in succession. But the director who shall be the President at the time of an election may always be re-appointed or re-elected as the case may be."

In pursuance of this provision, the Governor in January last omitted to re-appoint Vignaud and Toledano, two of the six State directors then in office ; in like manner the stockholders left out five of the members elected by them the preceding year, but as at the same time they voted for and elected Vignaud and Toledano, the two directors omitted by the Governor, and the result was that they retained in office nine members of the former board. Of the twelve directors, they elected Hebrard, who was the last on the list, having obtained the smallest number of votes. Jordy, who came next to Hebrard in point of number of votes, contends that as under the charter the stockholders could elect only two-thirds of the old directors, *i. e.* eight of them, Hebrard is not legally elected and that he (Jordy) must be considered as the twelfth member elected, in order that there should be in the board of 1841 four new directors chosen by the stockholders agreeably to the charter.

The decision of this controversy depends on a just interpretation of the third section of the charter above recited. It is said that the proviso in it does not consider the board of directors as one body, not more than two-thirds of which can be members of the board of an ensuing year, but as consisting of two bodies in *each* of which, one-third shall be left out each year, without reference to the composition of the other ; that the charter has been complied with by the State and the stockholders, for they have both left out the required number of old members; that the legislature not having inhibited in terms the election by the stockholders of the two directors omitted by the State, courts are not to infer or imply a prohibition which would restrict their power and right to select for the management of their affairs such persons as they consider most capable ; and

that inasmuch as by an interchange of directors between the
State and the stockholders the same persons might always re-
main in office, the additional proviso was added that " no di-
rector shall hold his office more than three years out of four in
succession." This construction would, in our opinion, entirely
defeat the very object of this provision, which we believe was
to obtain an annual renewal of one-third of the board. We do
not think that the words of the proviso justify the inference
that the board is to be considered as composed of two distinct
bodies and that the prohibition to appoint more than two-thirds
of the old members is to be understood as applying separately
to each class of directors without any reference to the other;
in other words, we believe that the old members, of whom the
State and stockholders are not to elect or appoint more than
two-thirds, are all those who were in office at the time of an
annual election. If the construction contended for were adopt-
ed it might happen, however improbable such an occurrence
may appear, and no doubt is, that the State would appoint six of
the directors elected the year before by the stockholders, and
the latter would take up and elect the six directors not re-ap-
pointed by the Governor; thus no change whatever would be
made in the composition of the board, and this violation of the
charter could be repeated three years in succession; for it
would be only on the fourth year that in such a case the whole
board would have to be renewed, which total renewal would
be an evil perhaps no less great than no change at all. After
providing for the annual renewal of one-third of the board, it
was no doubt thought that this precaution would be of no avail,
if the State and stockholders could every year without any limi-
tation retain in office the same directors to form the other two-
thirds of the board. We believe that the proviso restricting to
three successive years the eligibility of the directors was in-
serted with a view to prevent, that notwithstanding the annual
removal of members provided for, the affairs of the corporation
should constantly remain in the same hands and under the same
control. We are confirmed in this view of the subject by an

act passed on the 6th of March, 1819, entitled, "an act to grant certain privileges to the Louisiana State Bank and for other purposes." The bank had hardly been in operation twelve months when the doubts arose which have produced this controversy, and the same legislature which had so recently passed the charter were called upon to explain their meaning; they have done so in the eighth section of the act alluded to. It declares that " no more than four of the directors of the said bank in office at the time shall be appointed on the part of the State; nor more than eight of the directors for the year next preceding shall be chosen by the stockholders." We understand that this act has never been accepted by the stockholders and is therefore no part of their charter; but it has not the less force as an enactment explanatory of the views and intentions of the law giver. We are therefore of opinion that although the State and the stockholders proceed separately and at different times to choose their directors, yet the board can be viewed but as one body, of which two-thirds only can be continued in office for the ensuing year. If Hebrard, who has the smallest number of votes of the twelve directors elected in February last, is suffered to retain his seat, there will be in the new board thirteen members who were in office the preceding year. But it is contended by the counsel of Hebrard that the illegal composition of the present board results from the circumstance that two of the five members omitted by the stockholders were replaced by the two directors left out by the State; that even if the members rejected by the State for the year 1841 could be elected by the stockholders for the same year, this right of the stockholders must be subordinate to the condition of not electing so many of them as would create in the new board an excess of old members over the number of twelve. It appears to us that when the stockholders are about to re-elect the eight old directors they are permitted to retain in office, all the members of the former board, whether before elected by them or appointed by the Governor, stand before them on an equal footing and with an equal right to re-election. Their

right to choose among all the old members is restricted only by that proviso of the charter that "no director shall hold his office more than three years out of four in succession." It is not pretended that either Vignaud or Toledano have served three years in succession. But if Hebrard cannot be recognized as duly elected, it does not follow that Jordy, who comes next to him in point of number of votes, is therefore to be considered as elected. A new election must take place; such has been, we think, the universal practice and understanding in cases of this kind.

*If a director ejected as ineligible, the next highest on the list voted for but left out, is not entitled to his seat. A new election must take place.*

It is therefore ordered and decreed that the judgment of the Commercial Court be reversed; and proceeding to give such judgment as, in our opinion, should have been rendered below; it is ordered and adjudged that the election of P. A. Hebrard as a director of the Louisiana State Bank, made on the 23d of February last be and it is hereby declared null and void; the appellees paying the costs of this appeal.